IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

AARON BOLAND, as Personal Representative
of the Estate of Jordan Carter, deceased,

      Plaintiff,

v.                                                                    No. 1:19-cv-01109-RB-KRS
                                                                      consolidated with
                                                                      1:19-cv-01196-RB-KRS

SANDOVAL COUNTY, SANDOVAL COUNTY
BOARD OF COMMISSIONERS, SOUTHWEST
CORRECTIONAL MEDICAL GROUP, INC.,
VICTOR RODRIGUEZ, individually, and JOHN
and JANE DOES 1 through 10,

      Defendants.

## MEMORANDUM OPINION AND ORDER

Jordan Carter overdosed while imprisoned at the Sandoval County Detention Center (SCDC). The medical staff responded quickly in an effort to save his life, but they did not have access to a commonly-administered narcotic for overdoses. Carter passed away as a result of the overdose. Plaintiff Aaron Boland, on behalf of Carter, brings suit against Sandoval County, Sandoval County Board of Commissioners, Southwest Correctional Medical Group, Inc. (SCMG), Warden Victor Rodriguez, and Jane and John Does 1–10. Before the Court is a Motion to Dismiss (Doc. 2) on behalf of Sandoval County and Rodriguez. Considering that Boland has not pleaded sufficient facts to make out any of the claims against these two defendants, the Court will grant the Motion to Dismiss.

## I.      Background

Jordan Carter was a federal inmate incarcerated at SCDC in Sandoval County, New Mexico. (Doc. 1-1 (Compl.) ¶ 16.) On or about October 26, 2017, Carter received and consumed

Fentanyl and Acetyl fentanyl at the facility. (*Id.* ¶¶ 21–22.) After taking the drugs, his cellmate, Gabriel Rivas, "observed Mr. Carter lose consciousness, have a seizure and hit his head on the bunk." (*Id.* ¶ 24.) Rivas started making noise to draw the attention of SCDC officers, who came to the cell to perform a welfare check. (*Id.* ¶ 26.) "It took approximately five to eight minutes after Mr. Carter lost consciousness for SCDC personnel or a medical team to arrive at his cell." (*Id.* ¶ 27.)

Once the medical professionals reached the cell, they saw that Carter was struggling to breathe as a result of a drug overdose and ordered a "code blue." (*Id.* ¶¶ 28–29.) Yet despite this knowledge, they did not administer Narcan—"a well-known and standard antidote given when an individual shows signs of troubled breathing." (*Id.* ¶ 30.) The drug was not readily available at SCDC, nor had the staff been properly trained in its administration. (*Id.* ¶ 31.) Carter was brought to the medical unit, where the staff placed an automated external defibrillator (AED) on his chest. (*Id.* ¶¶ 33–36.) "After the AED instructed the officers not to shock, the officers proceeded with CPR." (*Id.* ¶ 36.) Emergency medical services (EMS) arrived later and continued CPR. (*Id.* ¶ 37.) Carter was pronounced dead at 12:01 AM on October 27, 2017. (*Id.* ¶ 38.) The investigator determined that the cause of death was the "[t]oxic effects of Fentanyl and Acetyl fentanyl." (*Id.* ¶ 39.)

Through Carter's estate, Aaron Boland brings suit against several Defendants. He alleges that SCDC "lacked sufficient screening measures to ensure that contraband, including drugs, were not brought into the facility." (*Id.* ¶ 40.) And further, he claims that given the presence of drugs, Narcan "should be a standard antidote given in all incidents where a detainee is having signs of troubled breathing." (*Id.* ¶ 45.) Boland brings constitutional claims through 42 U.S.C. § 1983 (Counts I, II, III); a wrongful death claim under the New Mexico Wrongful Death Act (WDA)

(Count IV); a negligent training and supervision claim under the New Mexico Tort Claims Act (NMTCA) (Count V); a New Mexico constitutional claim (Count VI); and a medical malpractice claim against SCMG (Count VII). Defendants filed this Motion to Dismiss on December 4, 2019, which is fully briefed.

## II.     Legal Standard

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), but it need not include "*detailed* factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added) (citation omitted). Inadequate pleading permits district courts to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the Court, taking all well-pleaded allegations as true, assesses whether the complaint contains "a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation omitted). The Supreme Court has been clear that no probability requirement exists, but a *plausibility standard* still governs and "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (citation omitted). Thus, courts should dismiss claims when it is "obvious" that there is no way to prevail with the available facts. *See Brown v. Sherrod*, 284 F. App'x 542, 543 (10th Cir. 2008) (citation omitted).

## III.    Claims against Sandoval County

At the outset, Defendants seek dismissal of all claims against Sandoval County, arguing that New Mexico law precludes suits against the county itself. (Doc. 2 at 4.) New Mexico law states that in suits against the county, "the name in which the county shall sue or be sued shall be the board of county commissioners . . . ." N.M. Stat. Ann. § 4-46-1 (1978). Courts have upheld this provision, requiring plaintiffs to name the board of county commissioners as the proper party.

*See Mayer v. Bernalillo Cty.*, No. CV 18-0666 JB\SCY, 2018 WL 6594231, at *30 (D.N.M. Dec. 13, 2018) (allowing plaintiff to amend the complaint); *Angel v. Torrance Cty. Sheriff's Dep't*, No. CV 04-195 BB/WPL, 2005 WL 8163621, at *4 (D.N.M. Aug. 23, 2005). Nevertheless, the Court will construe pleadings liberally and presume that the board represents the county when appropriate. *See Owens v. San Juan Cty.*, 347 F. Supp. 3d 669, 671 (D.N.M. 2018).

Here, Boland named both Sandoval County and the Board separately as Defendants. Recognizing the technical error under New Mexico law, Boland "concedes that the Board of County Commissioners of Sandoval County is the proper party and that Sandoval County should be dismissed." (Doc. 12 at 2.) Accordingly, the Court will grant Defendants' Motion to Dismiss all claims against Sandoval County.

## IV.    Claims against Victor Rodriguez

Next, Boland brings three federal claims against Rodriguez under section 1983, which provides that: "Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable . . . ." 42 U.S.C. § 1983. "Color of law" means that officer actions are cloaked with state authority. *West v. Atkins*, 487 U.S. 42, 49 (1988). Section 1983 acts as a vehicle for constitutional violations, allowing individuals to recover monetary damages from state officers in their personal capacities. *Hafer v. Melo*, 502 U.S. 21, 30 (1991). Individual officers accused of violating constitutional rights, however, may receive qualified immunity. *See id.* at 28. Thus, to recover against state officers, a plaintiff must show that an official's actions "violate *clearly established* statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted) (emphasis added). *Clearly established* means that the law

must be so "indisputable" and "unquestioned" that the officer is placed on notice. *See Lobozzo v. Colo. Dep't of Corr.*, 429 F. App'x 707, 710 (10th Cir. 2011) (citation omitted).

      **a.  Boland fails to allege facts showing that Rodriguez acted with deliberate indifference to a known medical condition in violation of the Eighth and Fourteenth Amendments (Count I).**

Rodriguez first moves to dismiss Boland's deliberate indifference claim. (Doc. 2 at 7.) A section 1983 claim for deliberate indifference to a known medical condition for a post-sentencing prisoner falls under the Eighth Amendment. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994). The Tenth Circuit has recognized that prison officials and municipalities cannot "guarantee the safety of their prisoners," but they are "responsible for taking reasonable measures to insure the safety of inmates." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999) (citations omitted). Courts employ a two part test to determine whether an Eighth Amendment violation has occurred: (i) the official causes a serious injury, which denies the inmate some minimum standard of life and (ii) the official has a culpable state of mind. *Farmer*, 511 U.S. at 834; *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *see also McClain v. Sheriff of Mayes Cty.*, 595 F. App'x 748, 751 (10th Cir. 2014) (applying the standard); *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (same).

The first element of a deliberate indifference claim requires an inquiry into whether the official caused the injury and whether the harm is of a serious nature that the Eighth Amendment seeks to prevent. *See Helling v. McKinney*, 509 U.S. 25, 36 (1993). Rodriguez argues that Boland's deliberate indifference claim fails because he has not shown how Defendant's own actions caused or contributed to Carter's death. (Doc. 2 at 7.) The Tenth Circuit has confirmed this principle, ruling that a plaintiff must show "not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." (*Id.* (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010)).)

Here, Carter's death is obviously the type of injury contemplated by the Constitution, but Boland fails to plead sufficient facts to show how Rodriguez specifically contributed to Carter's death. Boland uses conclusory language to argue that "Defendants" were deliberately indifferent, without alleging specific facts against Rodriguez. He lists several duties that supposedly fall under the claim: ensuring inmate safety; providing adequate healthcare; and assurance that inmates do not die from preventable causes. (*Id.* ¶ 52.) The Complaint also alleges that the prison lacked appropriate policies and procedures to screen for drugs. (*Id.* ¶ 53.) And knowing that narcotics were present, officials did not have the adequate medical resources to address foreseeable issues. (*Id.*)

Boland concedes that the Complaint is nonspecific and refers to "Defendants" collectively for each of the claims; yet, Rodriguez is the only individual named in the pleadings. (Doc. 12 at 4.) Thus, he argues, allegations made throughout the Complaint are directed at Rodriguez, even if he was not referenced specifically. (*Id.*) Boland states that Rodriguez owed Carter certain duties, and that he has "supervisory control over all aspects of the operation and security of the detention center." (*Id.*) But these allegations more appropriately fall within the scope of supervisory liability (Count II), and none illustrate how Rodriguez directly caused or contributed to Carter's death.

Defendants correctly acknowledge that *Iqbal* requires that officials sued under section 1983 are responsible only for their personal conduct. *See* 556 U.S. at 676. The Complaint only references Warden Rodriguez in the context of supervising and monitoring the prison—no facts tie him to the events of October 26, 2019. In *Peterson v. Creany*, the Tenth Circuit ruled that a warden would need personal involvement in the alleged constitutional violation to be liable in his individual capacity. *See* 680 F. App'x 692, 696–97 (10th Cir. 2017); *see also Ruark v. Drury*, 21 F.3d 213, 217–18 (8th Cir. 1994) (holding that even a warden's dismissive comments about a specific inmate

were not enough to make out a deliberate indifference claim). In the present case, Boland has not alleged facts showing that Rodriguez had any association with Carter outside his supervisory role. While the injury was certainly of the most serious nature, Rodriguez had no personal involvement in the matter.

Boland also fails under the second element, which requires that Rodriguez have a culpable state of mind. *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003). The Tenth Circuit has equated deliberate indifference with recklessness. *Belcher v. United States*, 216 F. App'x 821, 823–24 (10th Cir. 2007). Recklessness occurs when "the defendant recognizes the unreasonable risk and actually intends to expose the plaintiff to such risks without regard to the consequences to the plaintiff." *Uhlrig v. Harder*, 64 F.3d 567, 574 n.8 (10th Cir. 1995). Nowhere in the Complaint does Boland allege facts to suggest that Rodriguez—or any Defendant—both (i) knew drugs were present in the prison and (ii) intended or understood that a drug overdose was likely to occur. Given that Rodriguez did not directly violate Carter's constitutional rights, the Court need not determine whether his actions violated clearly established law. Therefore, the Court will dismiss the deliberate indifference claim (Count I) against Rodriguez.

    **b. Boland has failed to plead facts sufficient to show that Rodriguez is liable for failure to train and supervise employees of the prison in violation of the Eighth and Fourteenth Amendments (Count II).**

Next, Rodriguez moves to dismiss the supervisory liability claim. (Doc. 2 at 7.) Finding supervisory liability requires that a plaintiff show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (quoting *Dodds*, 614 F.3d at 1199); *Peterson*, 680 F. App'x at 696–97; *see also*

*Holmstrom v. Bd. of Cty. Comm'rs for Cty. of Chaves*, 181 F. Supp. 3d 862, 878 (D.N.M. 2016) (reiterating the standard). Here, Boland identifies the absence of two policies that allegedly contributed to Carter's death: (i) insufficient procedures to prevent drugs from entering the prison (Compl. ¶ 60) and (ii) failing to train staff to adequately to address drug overdoses and supply Narcan (*id.* ¶¶ 30, 31, 61). As warden, Rodriguez was responsible for administering these policies, which potentially expose him to supervisory liability.

Boland first alleges that there were inadequate procedures in place to prevent drugs from entering the prison. (Compl. ¶ 19.) Given Carter's death, the Court assumes for purposes of this motion that Rodriguez insufficiently managed the drug trade at SCDC. Yet Boland fails to cite or describe any details related to the controls and policies that the prison uses to scan for outside contraband. In a conclusory manner, he states that Rodriguez was indifferent to prison drug use, but without more support, such a claim does not meet *Iqbal*'s plausibility requirement. Boland cannot make out the third element of a supervisory liability claim either, failing to plead sufficient facts to connect the alleged lax screening policies with Carter's death. *Peterson* requires a link between the warden's administration of the policy in question and the alleged constitutional violation—specifically, it requires knowledge that the warden knew how the policy affected a particular inmate. *See* 680 F. App'x at 696–97. Here, Boland has not demonstrated that SCDC lacked adequate screening policies, nor has he shown that Rodriguez had the requisite state of mind to make out this cause of action.

Next, Boland claims that the medical staff had an insufficient response to the drug overdose. (Compl. ¶ 60.) Yet, the SCDC medical personnel arrived within "five to eight minutes" after Carter's roommate sought help. (Compl. ¶ 27.) In *Ruark* for instance, there was a twenty-minute delay in calling an ambulance to provide medical assistance to an inmate who overdosed,

and the Court still held that without more specific allegations of indifference, no liability existed. 21 F.3d at 217–18. Here, the medical team responded quickly and without hesitation; they utilized an AED and administered CPR. (Compl. ¶¶ 33–36.) About twenty minutes after the first responders reached Carter's cell, an EMS team arrived. (*Id.* ¶ 37.) Still, Boland argues that the failure to administer Narcan resulted in Carter's death. Specifically, "[t]here was no Narcan . . . readily available for emergency use for administration to inmates showing sign[s] of trouble breathing." (Compl. ¶ 31.)

Based on the Complaint, it appears to the Court that the medical team acted diligently and quickly to save Carter's life. But even if they acted insufficiently in not providing Narcan, Boland again fails to tie Rodriguez to their efforts to resuscitate Carter. *See Peterson*, 680 F. App'x at 697. Supervisory liability requires a showing that the official acted with the requisite state of mind to cause the constitutional violation. Nothing in Boland's Complaint links Rodriguez to any policy related to the medical team or Narcan, outside of his distant supervisory capacity over the entire facility. Moreover, SCMG is a separate entity providing medical care to the prison, and Boland has not alleged that Rodriguez has any say in how SCMG staffs and supplies its on-site teams. Therefore, without specific allegations connecting Rodriguez to the events of Carter's death, the Court must dismiss Count II against Rodriguez.

### c. Boland fails to make out a claim for unlawful custom, policy, or practice in violation of the Eighth and Fourteenth Amendments (Count III) against Rodriguez.

Boland finally alleges that Rodriguez is liable for promoting an unlawful policy or custom. (Compl. ¶¶ 65–71.) Boland's nonspecific pleading makes deciphering these causes of action difficult. This claim, however, is more appropriately directed at a municipality and not an individual. "Municipalities are not generally liable for constitutional violations committed by

public employees, but may be held responsible if a plaintiff's rights were violated by a municipal policy or custom." *Estate of Duke by & through Duke v. Gunnison Cty. Sheriff's Office*, 752 F. App'x 669, 674 (10th Cir. 2018) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)). A plaintiff must show: "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cty. Bd. of Cty. Comm'rs,* 151 F.3d 1313, 1316 (10th Cir. 1998).

Boland, however, inappropriately brings this claim forward against Rodriguez in his individual capacity. Traditionally, an individual liability claim related to a policy or custom is brought under a failure to train or supervise theory, as discussed in Count II. Boland, however, brings all causes of action against all Defendants, requiring the Court to decipher which claims are appropriate for which Defendants. As such, this throw-it-against-the-wall-to-see-what-sticks approach only confuses the pleadings and makes potentially viable claims more difficult to distinguish. Believing that Count III is only directed at the municipality and not Rodriguez, the Court will dismiss Count III against all Defendants, except Sandoval County Board of Commissioners.

**THEREFORE**,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 2) is **GRANTED**.

**ROBERT C. BRACK**
**SENIOR U.S. DISTRICT JUDGE**